UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nancy L.,[1]

              Plaintiff,                    Case File No.  19-cv-2353 (ECT/LIB)

       v.                              **REPORT AND RECOMMENDATION**

Andrew Saul,
Commissioner of Social Security,

              Defendant.

      Plaintiff, Nancy L. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 17, 20], and the Court took the matter under advisement on the written submissions.

      For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 17], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 20], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by her name only her first name and last initial are provided.

## I. Procedural History

On December 16, 2016, Plaintiff filed a Title II application for a period of disability and disability benefits. (Tr. 15).[2] Plaintiff alleged that her disability began on December 31, 2011. (Tr. 15). The Commissioner initially denied Plaintiff's present claims on April 24, 2017, and again, upon reconsideration, on July 17, 2017. (Tr. 15). On August 14, 2017, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 15).

Administrative Law Judge Erin Schmidt (hereinafter "ALJ") conducted a hearing on January 7, 2019. (Tr. 15). At the administrative hearing, Plaintiff was represented by a "non-attorney representative." (Tr. 15). Plaintiff and an independent vocational expert, L. David Russell, ("IVE Russell") testified at the hearing. (Tr. 15). On February 19, 2019, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 11–26). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 25).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 1–6). Subsequently, on June 27, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

On August 26, 2019, Plaintiff filed the present action. (Compl. [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, [Docket Nos. 17, 20], and the Court took the matter under advisement on the written submissions.

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 13], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 84 exhibits spanning over 2100 pages. (See, Administrative Record [Docket No. 13]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II.  Standards of Review

### A.  Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B.  Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the

Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 1–6), thus making the ALJ's decision the final decision of the Commissioner.

### C. Judicial Review

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision through the ALJ, the Court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the Court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity (hereinafter "RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

Before beginning the five-step disability evaluation process in the present case, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through September 30, 2017. (Tr. 18). This finding is not in dispute.

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engage in substantial gainful activity since December 31, 2011, Plaintiff's alleged disability onset date. (Tr. 17). This finding is <u>not</u> in dispute. The Court will refer to the period of time between that date Plaintiff last engaged in substantial gainful activity and the date through which Plaintiff meets the insured status requirement of the Social Security Act as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had "the following severe impairment: generalized anxiety disorder, major depressive disorder, attention deficit hyperactivity disorder (ADHD), and borderline personality disorder." (Tr. 17). Plaintiff does <u>not</u> challenge this finding made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have a presumptively disabling impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 12.04, 12.06, 12.08, or 12.11. (Tr. 18–20). Plaintiff does challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is limited to perform simple, routine, and repetitive tasks in a work environment involving only simple work related decisions and routine workplace changes. The claimant would be limited to no interaction with the general public and only occasional interaction with coworkers and supervisors and no tandem tasks. The claimant would be limited to jobs that do not require fast paced production quotas, defined as jobs requiring more than frequent handling and fingering.

(Tr. 20). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however," the ALJ also noted, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21). Plaintiff also challenges this credibility finding by the ALJ.

The ALJ found that Plaintiff was unable to perform her past relevant work. (Tr. 24). Plaintiff does <u>not</u> challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant could have performed." (Tr. 24). Relying upon testimony from independent vocational expert L. David Russell, ("IVE Russell"), the ALJ specifically found that among the occupations Plaintiff would be able to perform were "packager" of which there are 650,000 positions in the national economy; "laundry worker" of which there are 198,000 positions in the national economy; and "vehicle washer" of which there are 350,000 positions in the national economy. (Tr. 24–25). Plaintiff does not directly challenge the ALJ's findings at step five, other than as an implicit derivative challenge based on Plaintiff's other aforementioned challenges.

The ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 25).

## IV. Analysis

Plaintiff asserts two general overarching issues on her appeal of the ALJ's decision. First, Plaintiff argues that the "ALJ's RFC finding is contrary to law and not supported by substantial

evidence." (Plf.'s Mem., [Docket No. 18], at 1). Second, Plaintiff contends that the "ALJ's step 3 findings are not supported by substantial evidence," and those findings are not an "accurate[] reflect[ion]" of "Plaintiff's ability to independently, appropriately, effectively, and on a sustained basis perform in the four areas of mental functioning." (Plf.'s Mem., [Docket No. 18], at 1).

The Commissioner contends that he is entitled to summary judgment, arguing that each of Plaintiff's arguments is unavailing, and that the ALJ's opinion is supported by substantial evidence in the record as a whole. (Def.'s Mem. [Docket No. 21]).

### A.  Substantial Evidence

As observed above, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's RFC determination is unsupported by substantial evidence because it only "selectively references the record, omitting mention of the abnormal mental status examination findings"; it "fails to account for the extent of support [Plaintiff] receives and has received"; and it fails to properly considered the evidence in determining if Plaintiff's subjective complaints were consistent with the record as a whole as part of the ALJ's credibility determination. (Plf.'s Mem., [Docket No. 18], at 5–9, 22–28).  The Court finds unpersuasive Plaintiff's argument based on a lack of substantial evidence.

Although Plaintiff characterizes her argument as asserting the there is a lack of substantial evidence in the record to support the ALJ's RFC determination, in support of that argument, Plaintiff only summarizes those portions of the evidence from the record which she believes could conversely support a finding of disability. (See, Plf.'s Mem., [Docket No. 18], at 5–9, 22–28). Plaintiff asserts that the ALJ's consideration of the record was highly selective; however, in support of that assertion, Plaintiff too merely selectively summarizes portions of the

evidence from the record which she believes could support a finding of disability in her favor. (See, Plf.'s Mem., [Docket No. 18], at 5–9, 22–28).

To the extent that Plaintiff argues that there was substantial evidence in the record that might also have supported a finding of disability, the Court may not reverse the ALJ simply because substantial evidence may support an opposite conclusion. See, Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015). Nor can the Court substitute its own judgment or findings of fact for those of the ALJ, see, Woolf, 3 F.3d at 1213, because the Court "must consider evidence that both supports and detracts from the ALJ's decision," and it "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before the Court. Plaintiff merely highlights selective evidence favorable to her position, and she asks this Court to reevaluate said evidence to reach a conclusion different than the one reached by the ALJ when she considered the same record. This the Court cannot do. See, Milam, 794 F.3d at 983.

Plaintiff also asserts that the ALJ's RFC determination is not supported by substantial evidence because Plaintiff's subjective complaints support a finding of disability, and the ALJ erred in finding Plaintiff's subjective complaints to be inconsistent with the record as a whole. (Plf.'s Mem., [Docket No. 18], at 1). Plaintiff asserts that the ALJ failed to consider certain factors including the "four areas of mental functioning." This assertion is not factually support by the record. For example, Plaintiff asserts that the ALJ's credibility determination cannot be supported by substantial evidence because the ALJ failed to consider factual issues related to Plaintiff's activities of daily living. However, the record now before the Court demonstrates that the ALJ specifically and repeatedly discussed Plaintiff's activities of daily living, but she found

that those activities failed to support the debilitating nature of Plaintiff's subjective complaints. (Tr. 18–24).

Plaintiff highlights portions of the record regarding her daily activities which she believes support a finding of disability, (Plf.'s Mem., [Docket No. 18], at 7–9, 23–25); however, these are the same records to which the ALJ cited in determining that the Plaintiff's subjective complaints were less than entirely consistent with the record as a whole. (See, e.g., 18, 19, 20, 235–241, 593, 948, 1696, 1711, 1746, 1869, 1882, 2005, 2022, 2027). Here again, Plaintiff simply asks the Court to reweigh the evidence that the ALJ considered, and she asks the Court to come to a different conclusion than the ALJ. The Court must decline the Plaintiff's invitation. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

To the extent Plaintiff also argues that the ALJ erred because she failed to specifically discuss specific portions of a document, (Plf.'s Mem., [Docket No. 18], at 7–9, 23–25), even where the ALJ did discuss the document as a whole, the Court finds this argument as well to be unpersuasive. An ALJ is not, as Plaintiff here implicitly argues, required to set forth a factor-by-factor analysis of each and every piece of evidence in the record. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)); see, Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (citing Miller v. Shalala, 8 F.3d 611, 613 (8th Cir. 1993)). Further, the Eighth Circuit has held that the mere fact that an ALJ failed to mention some specific evidence does not necessarily per se indicate that the ALJ failed to consider that evidence. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (citing Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995)). Despite Plaintiff's argument that the ALJ considered only a selective portion of the record, the record now before the Court makes clear that the ALJ considered the record as a whole, including the portions of the record Plaintiff now seeks to

highlight. (See, e.g., 18, 19, 20, 235–241, 593, 948, 1696, 1711, 1746, 1869, 1882, 2005, 2022, 2027) (demonstrating evidence cited to and discussed by the ALJ which is within the same portions of the record as those specific citations to the record highlighted by Plaintiff).

Likewise, the Plaintiff's challenge to the sufficiency of the record to support the ALJ's RFC determination on the grounds that the ALJ omitted any "mention of the abnormal mental status examination findings," (Plf.'s Mem., [Docket No. 18], at 6), is itself not factually supported by the record now before the Court. Instead, the record as a whole demonstrates that the ALJ, throughout her decision, specifically cited to the very records Plaintiff now highlights. (Tr. 18–24). In fact, in her memorandum, Plaintiff acknowledges that the ALJ cited to large portions of the record she now highlights to the Court, (Plf.'s Mem., [Docket No. 18], at 7–8), but here the Plaintiff again simply seeks to have the Court reweigh the evidence and come to a different conclusion than did the ALJ contrary to the applicable standard of judicial review. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

Plaintiff additionally maintains that there exist "additional mental status examinations in the record not cited by the ALJ" which demonstrate that Plaintiff's mental status examinations "were not within normal limits." (Plf.'s Mem., [Docket No. 18], at 8–9). Here to Plaintiff persist merely in pointing to discreet portions of records, and then she asks this Court to reach a different conclusion than did the ALJ when she considered the same evidence. Cf., Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213. For example, Plaintiff provides several citations to notes made during the time she participated in Adult Rehabilitation Mental Health Services (hereinafter "ARMHS") sessions for the proposition that "[s]he has" demonstrated "limited attention span/concentration on several occasions," and Plaintiff asserts that ALJ did not cite to these specific notes. However, the ALJ specifically discussed Plaintiff's participation in

ARMHS, including Plaintiff's interactions with her ARMHS case manager and the notes from her ARMHS diagnostic assessment appointments; the ALJ did specifically reference Plaintiff's ARMHS records which Plaintiff now highlights. (Tr. 19, 21). Plaintiff merely takes issue with the conclusions drawn from the records themselves by the ALJ.

As previously noted, an ALJ is not required to set forth a factor-by-factor analysis of each and every piece of evidence in the record. Renstrom, 680 F.3d at 1065; Craig, 212 F.3d at 436; Black, 143 F.3d at 386; Miller, 8 F.3d at 613. Further, the Eighth Circuit has held that the mere fact that an ALJ failed to mention some specific evidence does not necessarily indicate that the ALJ failed to consider the evidence. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (citing Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995)). The record now before the Court demonstrates that the ALJ considered and discussed the record as a whole, including the records which Plaintiff now highlights.

Moreover, much of the evidence Plaintiff now highlights is based upon her own subjective, self-reporting; however, the ALJ specifically found that Plaintiff's subjective "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 21). Plaintiff's only arguments in opposition to that credibility finding are her same "substantial evidence" arguments, discussed above, which the Court does not find persuasive. The Court cannot, as Plaintiff would like, substitute its own judgment or findings of fact—regarding the consistency of Plaintiff's statements—for those of the ALJ. See, gen., Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213.

### B.  Medical Providers

Plaintiff further argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ erred in improperly discounting the opinions of Jessica Schmidt, MSW, LCSW, (hereinafter "LCSW Schmidt") and Joan McNab Jones, APRN-CNP (hereinafter "CNP Jones"). (Plf.'s Mem., [Docket No. 18], at 9–22).

"Social Security separates information sources into two main groups: acceptable medical sources and other sources. It then divides other sources into two main groups: medical sources and non-medical sources." Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1502, 416.902). "Social Security Ruling 06-3p clarifies how the SSA considers opinions from sources who are not what the SSA defines as 'acceptable medical sources.'" Pogue v. Colvin, No. 13-cv-4216, 2014 WL 5781141, at *18 (W.D. Mo. Nov. 6, 2014).

As Plaintiff concedes, neither LCSW Schmidt nor CNP Jones is an "acceptable medical source" who may render a "medical opinion." See, Sloane v. Astrue, 4999 F.3d 883, 888 (8th Cir. 2007); Pogue v. Colvin, No. 13-cv-4216, 2014 WL 5781141, at *18 (W.D. Mo. Nov. 6, 2014).[3] LCSW Schmidt as a licensed clinical social worker is considered an "other medical source." See, Stephens v. Berryhill, No. 16-cv-3033, 2017 WL 2559150, at *3 (W.D. Ark. June 13, 2017) (citing Social Security Ruling, SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9 2006); Nowling v. Colvin, 813 F.3d 1110, 1123 (8th Cir. 2016)). Similarly, CNP Jones as a certified nurse practitioner is considered an "other medical source." See, Yee Yang Vue v. Colvin, No.

---

[3] Although Plaintiff acknowledges in her memorandum that neither LCSW Schmidt nor CNP Jones is an "acceptable medical source" who may render a "medical opinion" or qualify as a "treating physician" as those terms are defined in relation to the Social Security Act, Plaintiff at several times throughout her memorandum repeatedly relies on and cites to statutes, regulations, and case law which deal exclusively with "acceptable medical sources." (See, Plf.'s Mem., [Docket No. 18], at 9–22). In fact, the majority of the legal citations Plaintiff proffered in support of her argument here are to sources of law which deal with "acceptable medical sources" not "other medical sources" as relevant to the current issue. (See, Id.). Plaintiff fails to offer any arguments to reconcile this inconsistency; instead, at portions of her memorandum, Plaintiff merely makes implicit arguments based on the assumption that either LCSW Schmidt or CNP Jones is an "acceptable medical source." The Court finds Plaintiff's reliance on these statutes, regulations, and cases in the present context to be inapposite.

13-cv-357 (ADM/FLN), 2014 WL 754873, *8 (D. Minn. Feb. 26, 2014) (citing 20 C.F.R. §§ 404.1513(d), 416.913(d)).

Although only "accepted medical sources" can provide medical opinions, "information from such other sources" such as LCSW Schmidt and CNP Jones, may "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007) (internal quotation omitted). Evidence provided by "other medical sources," such as LCSW Schmidt and CNP Jones, is to be considered by the ALJ. See, Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005). However, the ALJ is permitted to discount such other medical source evidence if it is inconsistent with other evidence in the record. See, Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("In determining what weight to give 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.") (citation omitted).

### 1. Jessica Schmidt, MSW, LCSW

LCSW Schmidt is a licensed clinical social worker who, it appears, has been seeing Plaintiff since May 26, 2016. (Tr. 908). Plaintiff saw LCSW Schmidt as part of outpatient dialectical behavior therapy. (Tr. 908).

On April 3, 2017, LCSW Schmidt completed a "Mental Medical Source Statement" form. (Tr. 910–12). In that form, LCSW Schmidt stated that Plaintiff had "mild" impairment in attention with only "moderate" impairment in concentration and memory. (Tr. 910). LCSW Schmidt checked the box indicating that Plaintiff's symptoms would not preclude her from "social/occupational functioning"; however, LCSW Schmidt noted that this was true if notes or manuals were available. (Tr. 910). In relation to Plaintiff's ability to perform activities in an eight hour workday, LCSW Schmidt concluded that Plaintiff had only minimal ability in the

areas of directing, controlling, or planning the activities of others; performing repetitive or short-cycled work; expressing her personal feelings; performing effectively under stress; attaining precise set limits, tolerances, and standards; and "reliability/consistency." (Tr. 911). LCSW Schmidt further indicated that Plaintiff had moderate ability in the areas of influencing people in their opinions, attitudes, and judgments; performing a variety of duties or maintaining motivation; working alone or apart in physical isolation; working under specific instructions; dealing with people; and making judgments and decisions. (Tr. 911). LCSW Schmidt felt that Plaintiff would need an unscheduled break every hour, and she would, as a result of her impairments, likely be absent from work for more than three days per month if she were working full time. (Tr. 912).

On December 20, 2018, LCSW Schmidt completed another "Mental Medical Source Statement" form. (Tr. 2099–2102). In this second form, some twenty months later, LCSW Schmidt now opined that Plaintiff had extreme limitations in the areas of performing activities within a schedule, maintaining regular attendance, and being punctual with customary tolerances; completing a normal work day and work week, without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; and accepting instructions and responding appropriately to criticism from supervisors. (Tr. 2100). LCSW Schmidt stated that Plaintiff had "marked" limitations in the areas of understanding and remembering detailed instructions; maintaining attention and concentration for more than two-hour segments; working in coordination with, or in proximity to, others without being distracted by them; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; and ability to tolerate normal levels of stress. (Tr. 2100). She further opined

that Plaintiff had "moderate" limitations in the areas of remembering locations and work-like procedures; carrying out detailed instructions; sustaining a ordinary routine without special supervision; making simple work-related decisions; asking simple questions or requesting assistance; travelling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. (Tr. 2100). LCSW Schmidt felt that Plaintiff would have "[n]one or [m]ild" limitations in the areas of understanding and remembering very short and simple instructions; carrying out very short and simple instructions; interacting appropriately with the general public; maintaining socially-appropriate behaviors and adhering to basic standards of neatness and cleanliness; and being aware of normal hazards and taking appropriate precautions. (Tr. 2100). LCSW Schmidt now noted only that Plaintiff would require some unscheduled breaks in an eight hour workday in addition to the standard breaks, and in support of that assertion, she noted that Plaintiff "report[ed] requiring a break every hour to refocus or go on a walk." (Tr. 2101). LCSW Schmidt maintained her earlier opinion that Plaintiff would be absent from work more than three days per month as a result of her impairments. (Tr. 2101). LCSW Schmidt checked the "Yes" box on the December 20, 2018, form when asked if Plaintiff's "limitations described in [the] form apply back to at least 12/31/2011." (Tr. 2102). Lastly, LCSW Schmidt opined that Plaintiff could "manage benefits" on her own, and interestingly, LCSW Schmidt wrote a note stating "[h]as improved over time." (Tr. 2102).

After discussing LCSW Schmidt's treatments notes and Mental Medical Source Statements, the ALJ expressly assigned the medical statements only "little weight." (Tr. 22–23). Regarding the April 3, 2017, medical source statement, the ALJ noted that it was assigned little weight because it "fail[ed] to offer any functional limitations or explanations beyond the conclusory opinion." (Tr. 22). The ALJ further discussed how the April 3, 2017, medical source

statement was inconsistent with other evidence in the record. (Tr. 22). Specifically, the ALJ noted that treatment notes in the record were inconsistent with the debilitating nature of LCSW Schmidt's April 3, 2017, medical statement, and the ALJ further noted that "the vast majority of [Plaintiff's] mental status exams were unremarkable." (Tr. 22).

Regarding LCSW Schmidt's December 20, 2018, medical source statement, the ALJ noted that it was "lacking supportability and consistency." (Tr. 23). Specifically, the ALJ noted that it was "not consistent with [Plaintiff's] functioning nor supported by medical evidence of record." (Tr. 23). The ALJ further noted that the December 20, 2018, medical statement was inconsistent with "the vast majority of [Plaintiff's] mental status exams [which] were unremarkable." (Tr. 23). Lastly, the ALJ noted that this medical source statement itself was internally inconsistent because although LCSW Schmidt noted that "she began treating claimant in 2015," the December 20, 2018, medical statement "provide[d] limits back to 2011without clear explanation." (Tr. 23).

As discussed above, LCSW Schmidt as a licensed clinical social worker is considered an "other medical source." See, Stephens, 2017 WL 2559150, at *3. Evidence provided by "other medical sources," such as LCSW Schmidt, is to be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the other evidence in the record. See, Raney, 396 F.3d at 1010. An ALJ may also discount such evidence if it is based on a plaintiff's subjective complaints which are themselves inconsistent with the record as a whole. See, Chesser v. Berryhill, 858 F.3d 1161, 1167 (8th Cir. 2017). Evidence provided by other medical sources may also be discounted if it is inconsistent with a plaintiff's demonstrated level of functioning. See, Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015). Social Security Ruling ("SSR") 06–03p provides six factors for the ALJ's consideration of opinion evidence from

"other" sources: (1) how long and how frequently the source has seen the plaintiff; (2) how consistent the opinion is with other evidence on the record; (3) the amount of evidence provided to support the opinion; (4) how well the opinion is explained; (5) whether the source has a relevant specialty or area of expertise; and (6) any other factors. Sloan, 499 F.3d at 889. "However, '[n]ot every factor . . . will apply in every case [and] [t]he evaluation of an opinion from an other source depends on the particular facts of the case.'" Dew v. Comm'r of Soc. Sec., No. 9-cv-1986, 2010 WL 3033779, at *19 (D. Minn. July 9, 2010) (alteration in original), report and recommendation adopted, 2010 WL 3033772 (D. Minn. July 26, 2010).

Plaintiff argues that the ALJ erred by assigning diminished weight to both LCSW Schmidt's April 3, 2017, and December 20, 2018, mental medical source statements because the relevant factors weigh in favor of assigning greater weight to the medical statements. Plaintiff once again merely highlights the evidence in the record which she believes supports assigning greater weight to LCSW Schmidt's medical source statements. (Plf.'s Mem., [Docket No. 18], at 10–22). However, as already noted above, the ALJ considered the very evidence Plaintiff now highlights; Plaintiff merely takes issue with the conclusions drawn by the ALJ in her evaluation of that evidence. The Court may not reverse the ALJ's decision simply because the Plaintiff believes there may also be substantial evidence to support an opposite conclusion. See, Milam, 794 F.3d at 983. Nor can the Court substitute its own judgment or findings of fact for those of the ALJ. See, Woolf, 3 F.3d at 1213.

In the present case, the ALJ fulfilled her responsibility with respect to consideration of LCSW Schmidt's medical source statements. (Tr. 18–23). In her decision, the ALJ stated that LCSW Schmidt's medical source statements were assigned only "little weight" based on their inconsistencies with the record as a whole, including Plaintiff's own self-reported activities.

The Court's review of the record finds that the ALJ's conclusion that LCSW Schmidt's medical source statements were inconsistent with the record as a whole is supported by substantial evidence in the record. Plaintiff's own self-reported activities demonstrate a level of functioning greater than the debilitating nature characterized by LCSW Schmidt's medical source statements. For example, on November 11, 2016, Plaintiff self-reported that she lived independently, including managing her own finances and transportation. (Tr. 623). On April 4, 2017, Plaintiff self-reported that she was able to complete chores when they were on her "checklist"; to cook for herself; to complete household chores such as laundry and "pick[ing] up" her residence; to mow the lawn; to drive herself; to go shopping; and to watch television with her daughter and roommate. (Tr. 233–241). On May 4, 2017, Plaintiff self-reported to LCSW Schmidt that she had been volunteering "at a church for 'Yarden' where" Plaintiff was "allotted a small plot to garden around the church." (Tr. 970). On June 29, 2017, Plaintiff self-reported attempting "to line up resources and housing" for her "special needs" daughter, (Tr. 1652), and on July 27, 2017, Plaintiff self-reported that she was acting as a sponsor in Overeaters Anonymous. (Tr. 1620).

The debilitating nature characterized by LCSW Schmidt's medical source statements is further inconsistent with other evidence in the record now before the Court. Despite the highly debilitating nature described in LCSW Schmidt's medical statements, the majority of Plaintiff's other mental status evaluations from her recurring appointments themselves demonstrated accurate orientation with logical thought content; goal oriented thought process; and intacted insight, judgment, recent memory, and remote memory with focused attention span and concentration. (See, e.g., Tr. 549, 567, 578, 585, 587, 591, 610, 624, 674, 696, 712, 730, 732, 745, 956, 1004–1005, 1613, 1638, 1746–1747, 1775, 1869, 1899, 1945, 1982, 2022).

Thus, it was within the ALJ's discretion to conclude that LCSW Schmidt's April 3, 2017, and December 20, 2018, medical source statements were entitled to only "little weight." See, Fleck v. Colvin, 956 F. Supp. 2d 1014, 1031 (N.D. Iowa 2013) ("In determining the weight afforded to 'other source' evidence an 'ALJ has more discretion and is permitted to consider any inconsistencies found within the record.'") (citing Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005)); Sloan, 499 F.3d at 888–89; Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015) (providing that evidence provided by other medical sources may be discounted if it is inconsistent with Plaintiff's demonstrated level of functioning).

Additionally, the record now before the Court indicates an additional reason to discount the evidence provided by LCSW Schmidt's medical source statements which was not considered by the ALJ. Several of the substantive assertions in LCSW Schmidt's medical source statements appear to be based predominately on only Plaintiff's subjective complaints. For example, when asked if Plaintiff would need additional unscheduled breaks, LCSW Schmidt responded that Plaintiff "reports requiring a break every hour to refocus or go on a walk." (Tr. 2101). This represents another basis for discounting the evidence provided by LCSW Schmidt's medical source statements because, as previously discussed, the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were inconsistent with the record as a whole. See, e.g., Chesser v. Berryhill, 858 F.3d 1161, 1167 (8th Cir. 2017) (providing that an ALJ may discount evidence from an other source if it is based on Plaintiff's subjective complaints which are inconsistent with the record as a whole).

Accordingly, the Court finds that the ALJ's decision to discount the April 3, 2017, and December 20, 2018, medical source statements of LCSW Schmidt was supported by substantial evidence in the record as a whole.

### 2.  Joan McNab Jones, APRN-CNP

CNP Jones is a certified nurse practitioner who, it appears from the record now before the Court, began treating Plaintiff in 2014. (Tr. 914). Although CNP Jones notes that she has treated Plaintiff since 2014, the specific nature of that treatment relationship is unclear. From the present record, it appears that Plaintiff's appointments with CNP Jones were not for mental health treatment but simply part of routine doctor's visits and follow up appointments after surgical procedures. (See, e.g., Tr. 329–526, 749–907, 916–935, 1035–1481). Nevertheless, on May 4, 2017, CNP Jones authored a letter "to be included in [Plaintiff's] file." (Tr. 914–915). CNP Jones' letter provided as follows:

> I have seen [Plaintiff] as a patient since 2014. Since that time she has had difficulty with depression, anxiety and attention deficit. She gets overwhelmed easily and does cry frequently. Her follow through is difficult and can be overwhelming. During her office visits she will ramble and changes subjects frequently. She will talk about what she needs to do to move forward but will then become over whelmed [sic] and start to cry. Her ability to do sustained tasks would be very questionable. Because of her anxiety, depression, becoming very overwhelmed with tasks and attention deficit it would be very difficult for her to be a reliable or dependable employee. Since I have known her she has been working with counselors. She has made some progress but her ability to be abel [sic] to sustain employment is very unlikely.

(Tr. 914).

After discussing CNP Jones' letter, which the ALJ described as a medical source statement, the ALJ expressly assigned the medical statement "little weight" noting "the lack of supporting treatment records" and that is was "inconsistent with the minimal and conservative nature of the [Plaintiff's] mental health treatment and continued level of functioning." (Tr. 22). The ALJ also noted that CNP Jones had failed to "provide a function-by-function assessment of the [Plaintiff's] conditions." (Tr. 22).

As discussed above, CNP Jones as a certified nurse practitioner is considered an "other medical source." See, Yee Yang Vue, 2014 WL 754873, *8. Evidence provided by "other medical sources," such as CNP Jones, is to be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the other evidence in the record. See, Raney, 396 F.3d at 1010.

Plaintiff argues that the ALJ erred by assigning diminished weight to CNP Jones' May 4, 2017, letter because the relevant factors weigh in favor of assigning greater weight to the medical statement. Once more, Plaintiff merely highlights portions of evidence in the record which she believes supports assigning greater weight to CNP Jones' May 4, 2017, medical statement. (Plf.'s Mem., [Docket No. 18], at 13–22). Plaintiff continues here to argue that there was also substantial evidence in the record that might have also supported assigning greater weight to CNP Jones' May 4, 2017, letter. However, as has been made abundantly clear, the Court may not reverse the ALJ's decision simply because there may be substantial evidence to also support an opposite conclusion. See, Milam, 794 F.3d at 983. The Court may not substitute its own judgment or findings of fact for those of the ALJ. See, Woolf, 3 F.3d at 1213.

The Court's review of the record finds that the ALJ's conclusion that CNP Jones' May 4, 2017, letter was inconsistent with the record as a whole is supported by substantial evidence in the record. For much the same reasons as discussed in relation to LCSW Schmidt's medical source statements, Plaintiff's own self-reported activities demonstrate a level of functioning greater than the conclusory characterizations set forth in CNP Jones' May 4, 2017, letter. (See, e.g., Tr. 233–241, 623, 970, 1652, 1620).[4]

---

[4] Moreover, similar to the medical statement of LCSW Schmidt, CNP Jones' May 4, 2017, letter is inconsistent with other evidence in the record now before the Court, including the majority of Plaintiff's many other mental status evaluations where she demonstrated accurate orientation with logical thought content; goal oriented thought process; and intacted insight, judgment, recent memory, and remote memory with focused attention span and concentration.

Additionally, CNP Jones' May 4, 2017, letter is unsupported by any medical evidence or objective test results; instead, it appears to be almost solely based on Plaintiff's own subjective complaints. (Tr. 373, 392, 472, 802, 1055–1057, 1075–1076). In her May 4, 2017, letter, CNP Jones fails to refer to any medical evidence or test results in support of her statement. This represents another basis for discounting CNP Jones' May 4, 2017, letter because, as previously observed, the ALJ properly found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms lacked credibility as they were inconsistent with the record as a whole. See, e.g., Chesser, 858 F.3d at 1167.

Thus, it was within the ALJ's discretion to conclude that CNP Jones' May 4, 2017, letter was entitled to only "little weight." See, Fleck, 956 F. Supp. 2d at 1031; Raney, 396 F.3d at 1010; Lawson, 807 F.3d at 967; Sloan, 499 F.3d at 888–89; Lawson, 807 F.3d at 967.

Accordingly, the Court finds that the ALJ's decision to discount the May 4, 2017, letter of CNP Jones was supported by substantial evidence in the record as a whole.

### C.  ALJ's Listing Findings

Finally, Plaintiff argues that the ALJ erred, at step three of the sequential analysis, in finding that Plaintiff's medically determinable impairments did not presumptively meet or medically equal the criteria of any relevant listing. (Plf.'s Mem., [Docket No. 18], at 30–40).

Plaintiff's argument here, however, is based solely on an extension of her other previously unsuccessful arguments. (See, Plf.'s Mem., [Docket No. 18], at 30–32). Plaintiff asserts that because she has demonstrated that the "ALJ's analysis of her described limitations," including the medical statements of LCSW Schmidt and letter of CNP Jones, was "inconsistent with the applicable authorities and not supported by substantial evidence" the ALJ's error

---

(See, e.g., Tr. 549, 567, 578, 585, 587, 591, 610, 624, 674, 696, 712, 730, 732, 745, 956, 1004–1005, 1613, 1638, 1746–1747, 1775, 1869, 1899, 1945, 1982, 2022).

"implicate[s] and undermine[s] the ALJ's step 3 finding as well." (Plf.'s Mem., [Docket No. 18], at 30).

However, as set forth in the sections above, the Court has now found each of Plaintiff's underlying specific arguments to be unpersuasive.

## V.  Conclusion

The Court's review of the record indicates that the ALJ's Residual Functional Capacity decision, as well as, the ultimate decision that Plaintiff was not disabled as defined by the Social Security Administration Act during the adjudicated period, were both supported by substantial evidence in the record as a whole. Further, on the Court's review of the record as a whole, the ALJ's decision to discount Plaintiff's subjective complaints and the ALJ's decision that jobs existed in significant numbers in the national economy which Plaintiff could perform within the RFC limitations were each supported by substantial evidence in the record.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment, [Docket No. 17], be **DENIED**; and

2.    Defendant's Motion for Summary Judgment, [Docket No. 20], be **GRANTED**.


Dated:  July 29, 2020                                      s/Leo I. Brisbois
                                                          Hon. Leo I. Brisbois
                                                          United States Magistrate Judge

## **NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).