UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nancy L.,                                    File No. 19-cv-2353 (ECT/LIB)

       Plaintiff,

v.                                           **OPINION AND ORDER**

Andrew Saul, Commissioner of Social
Security,

       Defendant.

Edward C. Olson, Minneapolis, MN, and Karl E. Osterhout, Osterhout Disability Law, LLC, Oakmont, PA, for Plaintiff Nancy L.

Linda H. Green, Social Security Administration, Office of the General Counsel, Dallas, TX, for Defendant Andrew Saul.

Plaintiff Nancy L. appealed the Commissioner of Social Security's denial of her application for disability insurance benefits. Compl. ¶ 1 [ECF No. 1]. The Parties filed cross-motions for summary judgment. ECF Nos. 17, 20. In a Report and Recommendation ("R&R"), Magistrate Judge Leo I. Brisbois recommended denying Nancy L.'s motion and granting the Commissioner's motion. R&R at 24 [ECF No. 22]. Nancy L. filed objections to the R&R [ECF No. 23], and the Commissioner has not filed a response. Because Nancy L. essentially has objected to the R&R in its entirety, the R&R will be reviewed de novo. 28 U.S.C. § 636(b)(1); *accord* L.R. 72.2(b)(3).

I

The administrative law judge ("ALJ") found that Nancy L. suffers from "the following severe impairments: generalized anxiety disorder, major depressive disorder, attention deficit hyperactivity disorder (ADHD), and borderline personality disorder." R. at 17.[1]  Nonetheless, the ALJ determined that Nancy L. "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* at 18.  The ALJ considered Nancy L.'s impairments under Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders) and 12.11 (neurodevelopmental disorders).  *Id.* at 18–20.  According to the ALJ, Nancy L.'s impairments did not meet the "[P]aragraph B" criteria, which require an impairment or combination of impairments to:

> result in at least one extreme or two marked limitations in a broad area of functioning which are:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves.  A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

*Id.* at 18, 20; *see* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)–(F).  The ALJ determined that Nancy L. had only a "moderate limitation" in each of the four categories.  R. at 18–20.

---

[1]   To match the R&R, this order's citations to the Administrative Record ("R.") will refer to the system of consecutive pagination that spans the exhibits.  The relevant page numbers are listed in the bottom right corner of each document.

Having found that Nancy L. was not presumptively disabled under the "[P]aragraph B" criteria, the ALJ next found that she had the residual functional capacity ("RFC") to perform work that was limited to: (1) "simple, routine, and repetitive tasks in a work environment involving only simple work related decisions and routine workplace changes"; (2) "no interaction with the general public and only occasional interaction with coworkers and supervisors and no tandem tasks"; and (3) "jobs that do not require fast paced production quotas, defined as jobs requiring more than frequent handling and fingering." *Id.* at 20. Based on the testimony of an independent vocational expert, the ALJ concluded that "there were jobs that existed in significant numbers in the national economy that [Nancy L.] could have performed." *Id.* at 24. Accordingly, the ALJ determined that Nancy L. was not disabled from December 31, 2011, the alleged onset date, through September 30, 2017, the date last insured. *Id.* at 25.

II

Nancy L. challenges two steps in the ALJ's analysis. First, she argues that the ALJ's RFC determination is contrary to law and not supported by substantial evidence. Pl.'s Mem. in Supp. at 4 [ECF No. 18]. In her view, the ALJ ignored evidence, failed to consider all relevant legal factors, and improperly discounted the opinions of two of her medical providers. *Id.* at 6. She believes that the record as a whole shows that her limitations are far more severe than the ALJ found. Second, she argues that the same flaws that infect the RFC determination also undermine the ALJ's finding that she had only "moderate limitations" under the Paragraph B functional criteria. *Id.* at 30. Magistrate Judge Brisbois disagreed. Acknowledging Nancy L.'s arguments, he concluded that the ALJ had

3

sufficiently considered the record and reached a result that is supported by substantial evidence.  R&R at 23–24.

Nancy L. first objects that Magistrate Judge Brisbois failed to address her argument that the ALJ ignored "the extent of support structures" that Nancy L. receives in order to function.  Pl.'s Objs. at 2–3.  This matters, according to Nancy L., because "[a]n RFC finding must represent a claimant's ability to function independently in the workplace." *Id.* at 3.  Contrary to Nancy L.'s objection, Magistrate Judge Brisbois explicitly acknowledged this argument at the beginning of his discussion, R&R at 8, but he nevertheless concluded that the ALJ had adequately considered and discussed the evidence, *id.* at 9–12.

The ALJ's written decision supports Magistrate Judge Brisbois's conclusion.  When evaluating Nancy L.'s RFC, the ALJ acknowledged that Nancy L. "received case management services with [Adult Rehabilitation Mental Health Services]" to "assist[] her with bill paying and ma[ke] sure she was organized and took her medication timely."  R. at 21.  The ALJ further noted that Nancy L.'s medical records showed "stabilization with treatment," but that Nancy L. "reported that she needed a lot of structure in order to complete activities."  *Id.* at 23.  "[T]o account for" this concern, the ALJ "reduced the skill level and interaction with others, as well as precluded fast paced production jobs" in the RFC.  *Id.*  Although the ALJ's discussion on this point is not extensive, the record does not support Nancy L.'s assertion that the ALJ "fail[ed] to account for the extent of support structures" that she receives.  Pl.'s Objs. at 2.  *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) ("Although required to develop the record fully and fairly, an ALJ is not required

to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Nancy L. also raises a more general version of the same attack. She argues that, throughout the written decision, the ALJ failed to neutrally develop the record and to "provide[] [a] reviewable rationale." Pl.'s Objs. at 4–7. *See Craig*, 212 F.3d at 436 (acknowledging an ALJ's duty to develop the record). In support of this argument, Nancy L. suggests that the relatively short length of the ALJ's written opinion (11 and a half pages) shows that the ALJ did not properly consider the whole 2000-plus page administrative record. *Id.* at 4. Nancy L. also provides several string citations to portions of the record that she asserts are inconsistent with the ALJ's findings. *Id.* at 5–6 & nn. 2–3. As Magistrate Judge Brisbois explained, however, the ALJ was not "required to set forth a factor-by-factor analysis of each and every piece of evidence in the record." R&R at 10 (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012); *see also Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999) ("[A] deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."). The record shows that the ALJ adequately considered the record as a whole, including evidence that detracted from her conclusions. *See* R. at 22–24.

The rest of Nancy L.'s arguments concern the ALJ's factual findings themselves. A court reviewing such findings is limited to deciding whether the findings are supported by substantial evidence. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

"Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the [ALJ's] conclusion." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (quotation omitted). The existence of evidence that detracts from the ALJ's findings does not automatically require reversal, *see Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015), "so long as the ALJ's decision falls within the 'available zone of choice,'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007)).

First, when evaluating Nancy L.'s RFC, the ALJ placed significant weight on the "vast majority" of her objective mental status examinations that had results "within normal limits"—*i.e.*, "average cognition, normal and intact associations, full orientation, intact recent and remote memory, normal attention span and concentration, normal thought content and thought processes, and intact insight and judgment." R. at 22. Nancy L. argues that the ALJ placed too much weight on these findings because some of the examinations *did* show limitations, and that the exam results did not accurately reflect the degree of limitations that Nancy L. exhibited elsewhere in the record. Pl.'s Mem. in Supp. at 8 & n.6. For example, Nancy L. cites mental status examinations showing limited attention span and concentration, as well as therapy records in which her providers recounted crying episodes, mood changes, and emotional intensity. *Id.* at 7–8. As Magistrate Judge Brisbois recognized, however, the ALJ cited several of these same documents in her decision, R&R at 10–11, and the ALJ is primarily responsible for resolving inconsistencies in the evidence. *See Johnson v. Colvin*, 788 F.3d 870, 872 (8th Cir. 2015) (explaining that a reviewing court will not "reweigh the evidence presented to the ALJ" (quoting *Gonzales v. Barnhart*, 465

F.3d 890, 894 (8th Cir. 2006)).  The ALJ, faced with subjective reports of Nancy L.'s limitations, reasonably weighed the results of Nancy L.'s objective mental status examinations when deciding that "the record fail[ed] to support the degree of limitations alleged."  R. at 23; *see Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("[T]he ALJ may disbelieve subjective complaints 'if there are inconsistencies in the evidence as a whole.'" (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)).

Second, the ALJ assigned "little weight" to three written medical opinions offered by Nancy L.'s therapy providers—two from Jessica Schmidt, MSW, LCSW, and one from Joan McNab Jones, APRN-CNP—which supported more severe limitations than those found by the ALJ.  R. at 22–23, 910–12, 914–15 2099–2102.  Under the relevant Social Security regulations, neither of these providers are "acceptable medical source[s]" whose opinions can "establish 'a medically determinable impairment.'"  *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (quoting 20 C.F.R. §§ 404.1513(a)(1)–(5), 416.913(a)(1)–(5)); *see also* 20 C.F.R. § 404.1502(a) (defining "[a]cceptable medical source").[2]  They are, however, "other medical sources" who may offer "evidence of the severity of the claimant's impairment and the effect of the impairments on the claimant's ability to work." *Lawson v. Colvin*, 807 F.3d 962, 967 (8th Cir. 2015) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006)).  ALJs must consider opinions from these "other" sources, but in doing so, they have "more discretion" than when they are weighing opinions from

---

[2]    The new version of the regulation includes "Licensed Advanced Practice Registered Nurse[s]," like Jones, in the definition of "[a]cceptable medical source," but only for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1502(a)(7).  Nancy L. filed her claim in 2016, so the previous version of the regulation applies.

"acceptable medical sources," and they are "permitted to discount [an opinion] if it is inconsistent with the evidence in the record." *Id.* The relevant regulation provides a nonexclusive list of factors[3] that inform the degree of weight to give opinions from other medical sources, but it cautions that "[n]ot every factor . . . will apply in every case," and ALJs must evaluate the opinions based on "the particular facts in each case." 20 C.F.R. § 404.1527(f)(1); *see Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing Social Security Ruling 06-03p, which was later rescinded after being essentially codified in § 404.1527(f)(1)).

Nancy L. argues that the ALJ improperly discounted the opinions of Schmidt and Jones, and for support she again identifies points in the record at which she or her therapists reported severe functional limitations. Pl.'s Mem. in Supp. at 9–22. But the ALJ gave specific reasons to give the opinions little weight, and Magistrate Judge Brisbois correctly concluded that these reasons were valid. R&R at 20, 23. The ALJ explained that Schmidt's first medical source statement, completed in April 2017, "fail[ed] to offer any functional limitations or explanation beyond the conclusory opinion" and was inconsistent with the "treatment notes and the remainder of the objective evidence in [the] file," including the mental status exams. R. at 22. Schmidt's 2018 medical source statement, according to the ALJ, "lack[ed] supportability and consistency" because it was "not consistent with [Nancy

---

[3]     These factors include: (1) whether the source of the opinion has examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) the "[s]upportability" of the opinion; (4) the "[c]onsistency" of the opinion with the record as a whole; (5) the "[s]pecialization" of the source; and (6) "[o]ther factors." 20 C.F.R. § 404.1527(c)(1)–(6), (f)(1).

L.'s] functioning nor supported by the medical evidence of record." *Id.* at 23. And although Schmidt opined that Nancy L.'s limitations extended back to 2011, the alleged disability onset date, she did not begin caring for Nancy L. until 2016.[4] *Id.* at 22–23. Finally, the ALJ found Jones's 2017 letter "unsupported by the lack of supporting treatment records" and "inconsistent with the minimal and conservative nature of [Nancy L.'s] mental health treatment and continued level of functioning." *Id.* at 22. These comments are consistent with the regulation and with Eighth Circuit precedent, and they reflect a reasonable view of the record as a whole. *See* 20 C.F.R. § 404.1527(f); *Lawson*, 807 F.3d at 967. For purposes of judicial review, that's enough. *See Milam*, 794 F.3d at 983 (explaining that a court should "not reverse an administrative decision simply because some evidence may support the opposite conclusion").

Nancy L. also challenges the ALJ's finding that her subjectively reported limitations were inconsistent with the record as a whole. Again, Nancy L. cites examples in the record where she exhibited severe limitations and argues that the ALJ's finding fails to account for this evidence. Pl.'s Mem. in Supp. at 22–28. For example, Nancy L. argues that the ALJ did not explicitly acknowledge her struggles with panic attacks or the extent of support she needs to complete daily tasks. *Id.* at 25–26. As before, the ALJ's discussion is not extensive, but it shows that the ALJ adequately considered the evidence and reached a reasonable conclusion. The ALJ "considered [Nancy L.'s] testimony regarding

---

[4]     The ALJ's decision says that Nancy L. began seeing Schmidt in 2015, R. at 23, but a letter from Schmidt indicates that Nancy L. was not "transferred to [her] care" until 2016, R. at 908.

NAV

limitations" and her reports "that she needed a lot of structure in order to complete activities."  R. at 23.  The ALJ also considered the opinions of Nancy L.'s therapy providers.  *Id.* at 22–23.  But the ALJ also noted that Nancy L. had engaged in several activities that suggested her limitations were less severe than reported.  Specifically, she had volunteered on several occasions, served as a sponsor in a support group, and assisted her daughter with health and housing difficulties.  R. at 22.  Nancy L. had also reported attending a local festival, "socializ[ing] and spen[ding] time watching television and cooking with friends," "manag[ing] her own finances with some anxiety," and being "able to shop, drive and go out alone."  R. at 19.  These activities, combined with the lack of objective medical evidence supporting Nancy L.'s alleged limitations, provide substantial evidence to support the ALJ's finding, even if substantial evidence could potentially support the opposite finding, too.

At the end of her brief, Nancy L. challenges an earlier part of the ALJ's decision: the finding that she was not presumptively disabled because her impairments did not meet or medically equal a listed impairment.  R. at 18–20.  As Magistrate Judge Brisbois observed, Nancy L. raises many of the same arguments here as she does about the RFC determination, R&R at 23, and those arguments have already been considered and rejected.  Here again, Nancy L. asserts that the ALJ's discussion of the record was "selective," and she highlights portions of the record that she believes are inconsistent with a finding that she had only "moderate" limitations.  Pl.'s Mem. in Supp. at 30–40.  All she shows, however, is that the record contains conflicting evidence.

One example is instructive.  When assessing Nancy L.'s functional abilities, the ALJ noted that she was able to volunteer as a "sound technician" for a "Landmark event."  R. at 19, 543.  Despite feeling "humiliated and embarrassed" by the "challenges that the event presented" for her, Nancy L. "was able to stay [at] the event and continue working."  R. at 543.  Nancy L., in her brief, points to a different therapy record in which she reported canceling a different volunteer commitment due to an "escalation of panic episodes."  Pl.'s Mem. in Supp. at 38; R. at 946.  It is the ALJ's responsibility to weigh inconsistencies like this one and to decide whether a claimant's subjective reports are consistent with the record as a whole.  *See Milam*, 794 F.3d at 983.  Faced with an extensive and occasionally contradictory record, the ALJ reached a result within the "available zone of choice." *Bradley*, 528 F.3d at 1115 (citation omitted).

## ORDER

For the foregoing reasons, and based upon all of the files, records, and proceedings in the above-captioned matter, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Objection to the Report and Recommendation [ECF No. 23] is **OVERRULED**;

2.    The Report and Recommendation [ECF No. 22] is **ACCEPTED**;

3.    Plaintiff's Motion for Summary Judgment [ECF No. 17] is **DENIED**;

4.    Defendant's Motion for Summary Judgment [ECF No. 20] is **GRANTED**;

5.      The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  September 15, 2020             s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court